UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| KATHY COTTRELL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6:20-cv-56-CHB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION AND** |
| ANDREW SAUL, Commissioner of ) | **ORDER** |
| Social Security, ) | |
| ) | |
| Defendant. | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on cross-motions for Summary Judgment [R. 18; R. 20]. The Plaintiff, Kathy Cottrell, exhausted her administrative remedies and brought this action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits and supplemental security income (SSI). The Court, having reviewed the record and the parties' motions, will deny Mrs. Cottrell's Motion for Summary Judgment [R. 18] and grant the Commissioner's Motion for Summary Judgment [R. 20].

I.      Background

In October 2016, Plaintiff Kathy Cottrell applied for disability insurance benefits, alleging disability beginning September 30, 2016 due to several issues, including liver problems, heart blockage, high blood pressure (hypertension), chronic obstructive pulmonary disease (COPD), acid reflux, arthritis, and "issues with bones." [Administrative Record (AR), pp. 196–97] Plaintiff later amended the alleged onset date to March 22, 2017. *Id.* at 20, 23. Plaintiff's application was denied initially and again on reconsideration. *Id.* at 20. At Plaintiff's request, an administrative hearing was conducted on August 9, 2018, before Administrative Law Judge

("ALJ") Jonathan H. Leiner. *Id.* at 162–95. On December 27, 2018, ALJ Leiner ruled that Plaintiff was not entitled to benefits. *Id.* at 20–29. This decision became the final decision of the Commissioner on January 14, 2020, when the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Plaintiff filed this action on March 5, 2020, seeking review of the ALJ's decision. [R. 1] The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. [R. 18; R. 20]

## II.     Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring the plaintiff's side. *Listenbee v. Sec'y of Health & Hum. Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). In other words,

> [t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.

*McClanahan*, 474 F.3d at 833 (second alteration in original) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

To determine disability, the ALJ conducts a five-step analysis pursuant to 20 C.F.R. § 416.920.

1. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.

2. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . .

3. Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.

4. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.

5. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Colvin*, 475 F.3d at 730 (quoting *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)). The burden of proof rests with the claimant on steps one through four. *Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). At the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the ALJ makes a dispositive finding at any point in the five-step analysis, the review terminates. *Colvin*, 475 F.3d at 730; 20 C.F.R. § 404.1520(a)(4).

### III. Discussion

The ALJ made several findings in the required sequence. He first determined that Cottrell had not engaged in substantial gainful activity since March 22, 2017 (the amended alleged onset date). [AR, p. 23] He next determined that Cottrell had the severe impairments of COPD, a back disorder, hypertension, and obesity; he found Cottrell's mental impairments to be non-severe. *Id.*

ALJ Leiner then found that Cottrell did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.

At step four, the ALJ determined Cottrell's "residual functional capacity" (RFC). *Id.* at 25–27. An individual's residual functional capacity is the most the individual can still do despite his or her impairment-related limitations. 20 CFR § 404.1545(a)(1). The ALJ found she had the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), including the ability to: "lift 50 pounds occasionally and 25 pounds frequently"; stand and walk for six hours and sit for six hours in an eight-hour workday; "occasionally climb ladders, ropes, and scaffolds"; and occasionally perform balancing, stooping, kneeling, crouching, and crawling. [AR, p. 25] He further found she cannot tolerate concentrated exposure to temperature extremes, humidity, vibration, environmental irritants, heights, or moving machinery. *Id.*

Given the ALJ's determination of Plaintiff's RFC, and based on testimony from a vocational expert, he concluded that Plaintiff was incapable of performing her past relevant work as a construction laborer and a carpet cleaner, but could perform other jobs existing in significant numbers in the national economy (taking into consideration her age, education, work experience, and RFC), such as bench worker, machine tender, and inspector. *Id.* at 27–28. Therefore, Plaintiff was adjudged "not disabled." *Id.*

Plaintiff challenges the ALJ's findings on two basic grounds. First, Plaintiff argues that the evidence does not support a finding that she could perform medium work, arguing that the ALJ "disregarded" her testimony concerning her back pain and the consultative exam of Dr. William Stafford. [R. 18-1, p. 6] Second, Plaintiff argues that the ALJ failed to consider her

"treating physicians" opinions from Dr. Raju Vora, a gastroenterologist, and "her numerous hospitalizations at Harlan ARH." *Id.* The Commissioner asserts that Plaintiff's arguments should be considered waived because they are unsupported and undeveloped. [R. 20, p. 8] The Commissioner further argues that, on the merits, the ALJ relied on substantial evidence in the record (including chronologically relevant medical records demonstrating unremarkable findings and conservative treatment) in making his determination of Plaintiff's RFC. *Id.* at 9. The Commissioner urges the ALJ properly supported his decisions in affording weight to the various medical opinions in the record. *Id.* at 9–11. The Commissioner also argues that Plaintiff has failed even to identify any opinions from Dr. Vora related to her alleged disabilities or her functional capacities during the relevant time period. *Id.* at 9 n.6. Finally, the Commissioner argues that the ALJ properly relied on a vocational expert in finding that Plaintiff could perform work that exists across the national economy at step five. *Id.* at 12–13.

The Court will address each of these issues in turn.

### A. The ALJ's Decision is Supported by Substantial Evidence.

Cottrell argues the ALJ lacked substantial evidence to support his determination that she could perform medium work, especially given her self-reported pain levels and the opinion of consultative examiner Dr. William Stafford. [R. 18-1, p. 6] For the reasons outlined below, the Court finds these arguments meritless.

The ALJ examined all Plaintiff's impairments, and particularly the four impairments he found to be severe: Plaintiff's back pain,[1] COPD, hypertension, and obesity. ALJ Leiner examined Plaintiff's back pain most extensively, as she noted in her hearing that it was the most

---

[1] Plaintiff clarified at her hearing with ALJ Leiner that the pain she feels in her back radiates down to her leg, "[p]robably down to [her left] ankle." [AR, p. 170] The Court will refer to this pain—both the pain in her back and the pain that starts in her back and radiates down to her leg—as her "back pain" for ease of reference.

debilitating of her impairments. [AR, pp. 25, 170] He detailed Cottrell's testimony on the severity of her back pain and also examined the objective medical evidence and opinions. *Id.* at 25–27. On Cottrell's testimony, the ALJ observed that Cottrell rates the pain as extreme (9 out of 10)—preventing her from standing comfortably for more than five minutes at a time and lifting more than a few pounds (e.g., a gallon of liquid). *Id.* at 25. But he noted that after requesting and being denied prescription strength medication by her physician for back pain, Cottrell did not even attempt to treat the pain with either over-the-counter aspirin[2] or "home remedies." *Id.* at 26.

On medical opinions, ALJ Leiner noted that the consultative examination by Dr. William Stafford in January 2017 found only mild signs of radiculopathy (pinched nerve on the spine), with no limitations on range of motion. *Id.* at 25 (citing Exh. 7F, Dr. Stafford Report). He considered that Dr. Stafford's examination revealed "consistently negative objective findings," that Cottrell had "clear lungs, a regular heart, normal gait, full lumbar flexion to 90 degrees, no significant limitations in range of motion testing, successful kneeling and squatting abilities, and consistently negative neurological, motor, sensory, and reflex findings." *Id.* A right ankle x-ray adduced merely "mild" degenerative changes. *Id.* Referencing years of treating physician records and records from Harlan ARH, the ALJ concluded that Dr. Stafford's findings appear "consistent with the similarly negative body of longitudinal testing." *Id.* at 26. The ALJ further noted the singular opinion offered by Dr. Stafford on which Plaintiff relies, that Cottrell would have "some difficulties" with prolonged standing or walking, or in performing strenuous activity. *Id.* at 26. Ultimately the ALJ discounted this portion of Dr. Stafford's opinion as a "vague opinion rather than a function-by-function assessment" of Cottrell's abilities. The ALJ also noted the opinion of

---

[2] Plaintiff and the ALJ talked generally about non-steroidal anti-inflammatory drugs (NSAIDs), which include aspirin, ibuprofen, naproxen, acetaminophen (Tylenol), and others. [AR, p. 174] Plaintiff is allergic to acetaminophen but does not appear to have allergies to other NSAIDs. *Id.* at 453. The Court will refer to the class of NSAIDs, minus acetaminophen, as "aspirin" for ease of reference.

state agency reviewing physician, Dr. Robert Brown, who reviewed the record in July 2017 and opined that Plaintiff had a functional capacity consistent with medium work. *Id.* at 27 (citing Exhs. 7A & 8A, Dr. Brown Report).[3]

Balancing Plaintiff's averments regarding her pain, her failure even to use over-the-counter medicine or "home remedies," the objective medical evidence, and medical assessments on the severity of her pain, ALJ Leiner determined that Plaintiff's testimony as to the severity of her pain was "not fully persuasive." *Id.* at 25–27. He further found her testimony that she could not stand for more than five minutes due to back pain "disproportionate to the record evidence" and her testimony that she is unable to lift two gallons "entirely unsupported by the evidence." *Id.* at 26.

The ALJ also considered Plaintiff's other impairments: COPD, hypertension, obesity, and mental impairments. On COPD, the ALJ noted that medical reports found Plaintiff's lungs to be clear and functional, with symptoms managed by an inhaler. *Id.* at 26. On hypertension, ALJ Leiner noted that medical reports of Plaintiff's blood pressure showed it to be mild-to-moderately elevated and treated conservatively. *Id.* He further noted Plaintiff remained non-compliant regarding weight loss, diet, activity, and her need to cease smoking. *Id.* And on obesity, the ALJ found it to be non-debilitating considering the essentially negative medical findings, her performance of a range of competent daily activities, and the fact that Plaintiff had similar weight in 2015 when she performed medium work as a laborer. *Id.* On Plaintiff's mental capacity, the ALJ found it to be non-severe and controlled with conservative treatment. *Id.* at 23.An ALJ meets the "substantial evidence" standard even if there is evidence supporting the

---

[3] In February 2017, reviewing physician Gary Turner likewise opined that Plaintiff was not disabled and had the functional capacity to perform a wide range of medium level work. [Exhs. 1A & 2A] The ALJ did not cite to Dr. Turner's report, but in any event, it is consistent with Dr. Brown's opinion on Plaintiff's functional capacity.

claimant or even if the preponderance of the evidence supports the claimant, so long as there is at least "more than a scintilla of evidence" to support his conclusion. *Cutlip*, 25 F.3d at 286; *McClanahan*, 474 F.3d at 833. ALJ Leiner's determination more than meets this standard. Substantial evidence supports the ALJ's determination, including Plaintiff's relevant medical records (that reflect largely unremarkable findings and conservative treatment), the opinion of the agency medical reviewer Dr. Brown, the opinions of consultative examiner Dr. Stafford, and Plaintiff's hearing testimony that she has not attempted non-prescription strategies to mitigate her pain. *Id.* at 25–26. Notwithstanding Plaintiff's claims regarding the severity of her back pain, the Court may not resolve conflicts in the evidence where substantial evidence supports the ALJ's decision. *Cutlip*, 25 F.3d at 286.

The ALJ properly discounted Plaintiff's testimony concerning her back pain and other ailments. ALJ Leiner cited numerous reasons for finding Plaintiff's testimony "not fully persuasive," and at times "entirely unsupported." [AR, p. 26] First, the ALJ noted that the objective medical evidence and opinions, including the "consistently negative objective findings" of Dr. Stafford, failed to support Plaintiff's subjective reports of back pain. *Id.* at 25–26. Further, despite requesting prescription medication to combat her pain, Plaintiff conceded at the hearing that her physician denied her request. *Id.* at 26. Plaintiff further acknowledged that she failed to pursue non-prescription remedies like aspirin, conceding that she had not thought to take them. *Id.* As the ALJ noted, Plaintiff "in essence pursues no treatment at all for this asserted worst impairment." *Id.*

Social Security Ruling (SSR) 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017) permits an ALJ to "find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record," where "the individual fails to follow prescribed treatment that

might improve symptoms." Still, the ALJ may not reach this conclusion "without considering possible reasons [the claimant] may not comply with treatment," including that an "individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.*; *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016); *see, e.g.,* SSR 18-3p, 83 Fed. Reg. 49616 (Oct. 29, 2018). Here, the ALJ acted properly in using Plaintiff's failure to seek treatment to discount her testimony of pain along with other objective medical evidence. He considered her reasons for not taking aspirin by asking her why she did not take it, and she responded that she has not thought of doing so. [AR, p. 174–75] No other reason was given. Since Plaintiff did not present any good reasons for not attempting treatment, the ALJ's choice to discount Plaintiff's testimony on this ground was proper. *See Jones*, 336 F.3d at 476 (holding that an ALJ's determination of credibility is to be afforded "great weight").

Contrary to Plaintiff's assertion that the ALJ "disregarded" the examination by Dr. Stafford, [R. 18-1, p. 6], the ALJ reviewed it in detail, along with its largely unremarkable findings. The ALJ described that Dr. Stafford performed a consultative examination that included testing range of motion and straight-leg testing. [AR, p. 552; Exh. 7F] She displayed only "mild" neurologic signs of radiculopathy, "consistently negative objective findings," "normal gait, full lumbar flexion to 90 degrees, no significant limitations in range of motion testing, successful kneeling and squatting abilities, and consistently negative neurological, motor, sensory, and reflex findings." *Id.* at 25. A right ankle x-ray adduced merely "mild" degenerative changes. *Id.* Dr. Stafford also recorded Cottrell's statement that she had severe back pain, could not lift more than 5 pounds, and could only stand and walk for 5 minutes. *Id.* at 551. Dr. Stafford then opined that Cottrell "would [appear to] have some difficulties performing activities that involved prolonged period[s] of standing, walking, or strenuous activity. Shorter periods of

standing and seated work would likely be better tolerated." *Id.* at 553. The ALJ discounted that part of Dr. Stafford's opinion related to Plaintiff's functional capabilities because it "presented merely a vague opinion rather than a function-by-function assessment of the claimant." *Id.* at 27. Considering the opinion with the rest of the evidence, ALJ Leiner determined to afford it "some weight" only to the extent it was generally consistent with the record evidence showing a lack of disability. *Id.*

Under SSA regulations, ALJs must "evaluate every medical opinion [they] receive," consider the opinion "together with the rest of the relevant evidence" in the record, and consider certain factors in deciding the weight given to a medical opinion, including opinions from non-treating sources. 20 C.F.R. § 416.927(b), (c). Those factors include: 1) whether the opinion is based on an examining relationship; 2) the supportability of the medical opinion such as medical signs and laboratory findings in the record and the explanation given for the opinion; 3) the consistency of the medical opinion with the record as a whole; and 4) the specialization of the medical source and whether the opinion is on issues in her area of specialty. § 416.927(c)(1), (3)–(5); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (explaining an ALJ weighs medical opinions "based on the examining relationship (or lack thereof), specialization, consistency, and supportability"). In evaluating Dr. Stafford's conclusion, the ALJ noted that Dr. Stafford's exam was consultative in nature, that it adduced "consistently negative objective findings," and was "consistent with the similarly negative body of longitudinal testing." *Id.* at 26. The ALJ found Dr. Stafford's opinion "generally consistent with the preponderance of the record evidence to the extent that it finds claimant not disabled," and to that extent he afforded it "some weight." *Id.* at 26–27. These were appropriate factors for the ALJ to consider, and he properly discounted Dr. Stafford's vague opinion on Plaintiff's functional limitations as "vague . . . rather

than a function-by-function assessment." *Id.* That is, based on the longitudinal body of medical records, Dr. Stafford's objective findings, and the opinion of Dr. Brown, the ALJ properly discounted this portion of Dr. Stafford's opinion. *See Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) (finding an ALJ's determination to reject portions of the medical opinion and accept other portions was proper). Regulations do not require a more exhaustive analysis. *See* 20 C.F.R. § 404.1527(d)(2).

### B. The ALJ Did Not Disregard Evidence from Treating Physicians.

Plaintiff next argues that the ALJ ignored evidence from treating physicians[4], including Dr. Raju Vora, in determining she could perform medium work. [R. 18-1, p. 6] First, the Court agrees with the Commissioner that this argument is waived as it is completely undeveloped and consists of merely conclusory assertions, void of regulatory or case law support. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("[I]t is a 'settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))). Plaintiff acknowledges she was seen by Dr. Vora "for a referral" related to pain in the area where her "liver, gallbladder and right kidney reside." [R. 18-1, p. 5] The sum total of Plaintiff's argument then consists of two sentences: "The ALJ has completely ignored her treating physicians [sic] opinions from Dr. Vora and her numerous hospitalizations at Harlan ARH in determining that she could perform medium work. She has arthritis, ischemic heart disease and back problems." [R. 18-1, p. 6] Plaintiff's brief contains no citations to regulatory support or even a single case. More importantly, she cites to no opinions provided by Dr. Vora

---

[4] A "treating source" or "treating physician" is a claimant's "own acceptable medical source who provides [her] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [her]." 20 C.F.R. § 416.927(a)(2).

(or any other physician, treating or otherwise) that the ALJ supposedly ignored or that would support her claimed disability. Plaintiff has waived her arguments in this regard.

Even considering her argument on the merits, Plaintiff's argument is fatally flawed for many reasons. As mentioned, she fails to identify any opinions from Dr. Vora or any other provider that support her claims. Indeed, as noted by the ALJ, the record evidence demonstrates generally conservative treatment for her medical ailments and unremarkable clinical and medical testing findings. *Id.* at 23–26. She has identified no relevant opinions by Dr. Vora (or other medical providers for that matter) that would support her claims, and the Court could find none. Plaintiff's reference to the medical evidence in this regard largely outlines *her subjective complaints of pain*, not any relevant medical opinions. [R. 18-1, pp. 3–6] What is more, Dr. Vora examined Cottrell for liver issues and simply reported *Cottrell's statement* that she had pain in her upper right quadrant (i.e., around her liver) and could not lay on that side. *Id.* at 561. Notably, Cottrell's back was never mentioned. *Id.* Further, the Court seriously questions whether Dr. Vora even qualifies as a "treating physician" as defined by the regulations. 20 C.F.R. § 416.927(a)(2) Plaintiff herself notes that she was seen by Dr. Vora "for a *referral* with complaints of pain in the right upper quadrant, where the liver, gallbladder and right kidney reside." [R. 18-1, p. 5 (emphasis added)] The administrative record does not reflect any other interactions between Plaintiff and Dr. Vora, which indicates that Dr. Vora did not have the ongoing relationship treatment relationship with Plaintiff to be considered a "treating physician." *See* 20 C.F.R. § 416.927(a)(2); *Gayheart*, 710 F.3d at 375.

Though she claims the ALJ "completely ignored . . . her numerous hospitalizations at Harlan ARH," she identifies no favorable opinions whatsoever that the ALJ supposedly ignored in making his findings. In any event, the ALJ did not ignore these medical records, but rather

referred to such records and medical testing as support for his findings [AR, pp. 23–26], noting the "negative body of longitudinal testing" and other chronologically relevant medical evidence. *Id.* at 26 Plaintiff does not specify any other treating physicians who gave an opinion as to the severity of her back pain, and after an extensive view of the record, the Court cannot find any.

Plaintiff has identified no opinion from Dr. Vora or any medical provider that supports her disability claims. The ALJ considered all the relevant medical opinions and did not "disregard" any other relevant medical evidence.

### C. The ALJ properly Relied on a Vocational Expert.

Defendant raises the issue of the ALJ's reliance on vocational expert Martha Goss in finding that Plaintiff could perform medium work in jobs that exist across the national economy, including a bench worker, a machine tender, and an inspector/tester. Though Plaintiff did not raise this issue, the Court will consider it below. When an ALJ determines at step four that a claimant cannot perform his or her past work, the burden shifts to the Commissioner at the fifth step and requires the Commissioner to establish that the claimant can perform other work. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 571 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work."). This is generally established through the testimony of a vocational expert. At the hearing, the ALJ poses a question to the vocational expert that describes a "hypothetical individual" who has the same abilities and limitations as the actual claimant. *Lancaster*, 228 F. App'x at 571. The vocational expert then answers whether there are jobs existing within the national economy that the hypothetical individual could perform. *Id.* "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other

work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d at 239, 241 (6th Cir. 2002)). The ALJ is not required to list the claimant's medical conditions in the hypothetical posed to the vocational expert, but he must accurately describe his assessment of what the claimant "can and cannot do." *Id.*; *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

Here, the ALJ described the following hypothetical individual: the hypothetical individual was able to: "lift 50 pounds occasionally and 25 pounds frequently"; stand and walk for six hours and sit for six hours in an eight-hour workday; "occasionally climb ladders, ropes, and scaffolds"; and occasionally perform balancing, stooping, kneeling, crouching, and crawling. [AR, pp. 192–93] Based on this hypothetical, the vocational expert identified the jobs of bench worker, machine tender, and inspector/tester, all of which existed in significant numbers in the national economy. *Id.* at 193. This method of analysis follows the required process under step five, as ALJ Leiner described a hypothetical individual that mirrored his findings on Cottrell's RFC. *See Ealy*, 594 F.3d at 516. So long as the ALJ's finding of Plaintiff's RFC was proper— and the Court has determined that it was—the ALJ's reliance on the vocational expert was also proper.

### IV. Conclusion

Because the decision of the Commissioner was made pursuant to proper legal standards and supported by substantial evidence,

**IT IS HEREBY ORDERED** as follows:

1. The decision of the Commissioner is **AFFIRMED**.

2. Plaintiff's Motion for Summary Judgment [**R. 18**] is **DENIED**.

- 15 -

3. Defendant's Motion for Summary Judgment [**R. 20**] is **GRANTED**.

4. A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This the 3rd day of March, 2021.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY